24 May 2000

       No. 2--98--1629 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellant,

v.

SAMIR R. PATEL,

Defendant-Appellee. 

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court of Du Page County.

No.  98--CM--877

Honorable

Cary B. Pierce,

Judge, Presiding.

JUSTICE COLWELL delivered the opinion of the court:

The issue presented in this case is whether a passenger in an automobile detained pursuant to a routine traffic stop is entitled to 
Miranda
 warnings where the passenger is questioned regarding suspected unlawful activity unrelated to the basis for the stop.  The State appeals from the trial court's order granting the motion to suppress statements of defendant, Samir R. Patel.  For the reasons that follow, we affirm.

Defendant was charged by traffic citation with the unlawful consumption of alcohol by a minor.  235 ILCS 5/6--20 (West 1996).  Defendant filed a motion to suppress the statements he made to police, alleging that the statements were made without the benefit of the protections guaranteed by 
Miranda v. Arizona
, 384 U.S. 436, 
16 L. Ed. 2d 694
, 
86 S. Ct. 1602 (1966).

The only witness to testify at the suppression hearing was Officer David Rivkin of the Elmhurst police department.  Officer Rivkin stated that at approximately 8 a.m. on February 14, 1998, he was in a marked squad car traveling southbound on County Line Road when he observed a red Celica with no license plates and a broken rear window.  Officer Rivkin followed the vehicle into the driveway of a nearby factory.  Subsequently, Officer Rivkin stopped the vehicle and requested backup.  Upon running a check, Officer Rivkin learned that the driver of the vehicle was driving on a suspended license.  When backup arrived, the driver was taken into custody.

Officer Rivkin then testified that he had to decide what to do with the automobile because it was parked on private property.  He approached defendant, who was a passenger in the vehicle, and asked to see defendant's driver's license to determine if defendant was eligible to drive the vehicle off the property.  Defendant's driver's license indicated that defendant was 20 years old.  In speaking with defendant, Officer Rivkin observed that defendant's eyes were bloodshot and that his speech was slurred.  Officer Rivkin then asked defendant how much he had to drink.  Defendant responded, "a few beers."  Defendant was placed under arrest.

On cross-examination, Officer Rivkin testified that he never cited the driver of the vehicle for failure to have license plates because he discovered a temporary registration amongst the fragments of broken glass in the backseat of the car.  Officer Rivkin stated that both his squad car and the backup squad car were parked behind the Celica.  Officer Rivkin admitted that he did not read defendant his 
Miranda
 rights prior to asking defendant how much he had to drink.  Officer Rivkin also testified that at the time he asked defendant how much he had to drink he probably had possession of defendant's driver's license.  Finally, Officer Rivkin acknowledged that defendant was not free to leave at the time he asked defendant how much he had to drink.

The trial court granted defendant's motion to suppress the statement that he had consumed "a few beers."  The State then filed a motion to reconsider.  At a hearing on the motion to reconsider, the State sought clarification as to whether the trial court granted the motion to suppress based on Officer Rivkin's failure to "Mirandize" defendant.  
In denying the State's motion to reconsider, the trial court commented:

"[B]ased on the totality of what I heard which would go to the weight and credibility of all the witnesses as well, I feel that under the circumstances asking the passenger of this particular vehicle based upon the situation that was presented to the Court in the form of testimony, it was inappropriate; it was a violation of his constitutional rights to be asked whether he consumed alcohol based upon what the officer testified to."

The State then filed a certificate of impairment and appealed pursuant to Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)).

On appeal, 
the State argues that defendant was not entitled to 
Miranda
 warnings because he was questioned during a routine traffic stop.  Defendant contends, however, that the trial court's ruling was not based on the absence of 
Miranda
 warnings.  According to defendant, the trial court suppressed his statement as the fruit of an illegal search and seizure.  

We acknowledge that the basis for the trial court's holding is vague.  However, we note that defendant's motion to suppress his statement was limited to arguing that his statement was given without the safeguards guaranteed by 
Miranda
.  Therefore, we will limit our discussion to whether, under the facts of this case, defendant was entitled to 
Miranda
 warnings.

Generally, a reviewing court will reverse a trial court's denial of a motion to suppress statements only if that ruling is manifestly erroneous.  
People v. Nielson
, 187 Ill. 2d 271, 286 (1999).  However, 
de novo
 review is appropriate if neither the facts nor the credibility of the witnesses is at issue.  
Nielson
, 187 Ill. 2d at 286.  Here, the record indicates that the trial court accepted the testimony of Officer Rivkin, the only witness before it.  As a result, we 
will conduct a 
de novo
 review.

In 
Miranda
, the Supreme Court held that the State may not use statements made during the custodial interrogation of an individual unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.  
Miranda
, 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612.  The 
Miranda
 court held that suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, that they are entitled to the presence of an attorney at the time of interrogation, and that if they cannot afford an attorney, one will be appointed for them.  
Miranda
, 384 U.S. at 444, 16 L. Ed. 2d at 706-07, 86 S. Ct. at 1612.  The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  
Miranda
, 384 U.S. at 444, 16 L. Ed.2d at 706, 86 S. Ct. at 1612.  However, 
Miranda
 warnings are not required where the police conduct a general on-the-scene investigation as to the facts surrounding a crime or other general questioning.  
Miranda
, 384 U.S. at 477-78, 16 L. Ed. 2d at 725, 86 S. Ct. at 1629.

In determining whether a person is "in custody" for purposes of 
Miranda
, a court first examines the circumstances surrounding the interrogation.  
Thompson v. Keohane
, 516 U.S. 99, 112, 133 L. Ed. 2d 383, 394, 116 S. Ct. 457, 465 (1995).  The court then asks if, given those circumstances, a reasonable person would have felt he was not at liberty to terminate the interrogation and leave. 
Thompson
, 516 U.S. at 112, 133 L. Ed. 2d at 394, 116 S. Ct. at 465.  Generally, if it is undisclosed, a police officer's subjective view that the individual under questioning is a suspect does not bear on the question of whether the individual is in custody for purposes of 
Miranda
.  
Stansbury v. California
, 511 U.S. 318, 324, 128 L. Ed. 2d 293, 299, 114 S. Ct. 1526, 1529 (1994).  However, an officer's beliefs on the custody issue, if conveyed by word or deed to the individual being questioned, are relevant to the extent that they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his freedom of action.  
Stansbury
, 511 U.S. at 325, 128 L. Ed. 2d at 300, 116 S. Ct. at 1530.

Among the factors that a reviewing court will consider in determining whether an interrogation was custodial are (1) the location, time, length, mood, and mode of the interrogation; (2) the number of police officers present; (3) the presence or absence of the accused's family or friends; (4) any indicia of formal arrest; (5) whether the accused is allowed to walk from the location of the interrogation unaccompanied by police; and (6) the age, intelligence, and mental makeup of the accused.  
People v. Rivera
, 304 Ill. App. 3d 124, 128 (1999).
  

In this case, we conclude that defendant was "in custody" for purposes of 
Miranda
.  Officer Rivkin made a routine traffic stop of the vehicle in which defendant was traveling.  He conducted an on-

the-scene investigation related to the basis for the stop that resulted in the arrest of the driver of the vehicle.  At that point, the two police cars were parked behind the vehicle in which defendant was an occupant.  Officer Rivkin did not testify that he suspected defendant of any criminal activity.  Nevertheless, he approached the passenger side of the vehicle and requested defendant's driver's license.  According to Officer Rivkin's testimony, two things became clear upon examining defendant's driver's license: (1) defendant was under 21 years of age, and (2) defendant's demeanor showed signs of alcohol consumption.  With this knowledge in hand, and while standing at the passenger-side door of the vehicle, Officer Rivkin asked defendant how much he had to drink.  At this point, a reasonable person in defendant's position would not believe that he was free to leave. 

The State argues that a contrary decision is dictated by 
Berkemer v. McCarty
, 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984).  However, our holding is not inconsistent with 
Berkemer
.  In 
Berkemer
, a police officer stopped the defendant's car after observing that the defendant was driving erratically.  The officer ordered the defendant out of the car and asked him to perform field sobriety tests.  The officer then asked the defendant whether he had been using intoxicants.  The defendant admitted to consuming beer and smoking marijuana.  The officer placed the defendant under arrest.  The Supreme Court held that the roadside questioning of a motorist detained pursuant to a routine traffic stop does not rise to the level of a custodial interrogation for purposes of 
Miranda
.

Two factors set this case apart from 
Berkemer
.  First, the defendant in 
Berkemer
 was the driver of the detained vehicle.  In this case, defendant was merely a passenger.  Second, the defendant in 
Berkemer
 was detained because an officer observed him driving erratically.  Upon conducting an on-the-scene investigation regarding his observation, the defendant admitted to consuming beer and smoking marijuana shortly before the stop.  Applying 
Berkemer
 to this case, 
any 
roadside questioning of the driver of the vehicle would not require 
Miranda
 warnings.  However, once the driver of the vehicle was taken into custody, the basis for the initial traffic stop ceased.  Officer Rivkin's decision to question the passenger of the detained vehicle regarding matters not germane to the initial traffic stop transformed this situation into a custodial interrogation outside the ambit of 
Berkemer
.

The State also relies on 
People v. Saturday
, 135 Ill. App. 3d 1052 (1985), and 
People v. Laspisa
, 243 Ill. App. 3d 777 (1993)
.  In 
Saturday
, a police officer observed the defendant driving on the wrong side of the road and disobeying a stop sign.  The officer stopped the defendant and asked him for his driver's license.  The defendant explained that his license was suspended.  The officer noticed that the defendant smelled of alcohol and his speech was slurred.  He then administered four field sobriety tests, all of which the defendant failed.  The defendant was then arrested.  We affirmed the trial court's denial of the defendant's motion to suppress the results of the field sobriety tests.

In 
Laspisa
, Officers Panico and Nicholas observed the defendant and three others, including Kalteux, sitting in a parked car.  Officer Nicholas first noticed the defendant sitting with his head down toward his lap.  Officer Nicholas then observed the defendant pull his head back and tilt it up.  Officer Nicholas saw Kalteux and another occupant of the car perform the same movements.  The officers followed the Cadillac until it pulled into the parking lot of a nearby bar.  The defendant and Kalteux exited the car.  Nicholas then told Kalteux that it looked as though the four had been snorting cocaine.  When asked, Kalteux admitted that they had cocaine and that he had ingested some.  After the officers discovered the cocaine, they arrested all four suspects.  The trial court granted the defendant's motion to suppress the prearrest statements on the ground that they were obtained in violation of 
Miranda
.  With one judge dissenting, we reversed.  We determined that the defendant's prearrest statements were given as the result of an on-the-scene investigation.

Saturday
 and 
Laspisa
 are distinguishable from the instant case.  In both those cases, the defendants were stopped after police observed them personally performing suspicious activities.  More importantly, the defendants in both 
Saturday
 and 
Laspisa
 were not placed under the same restraints of freedom as defendant in this case.  For instance, the defendants were permitted to leave their cars during questioning, and the questioning related to the reason that they were originally detained.  Implicit in both 
Saturday
 and 
Laspisa
 is the fact that we determined that the defendants were not "in custody" for purposes of 
Miranda
 when they were questioned.  As a result, the defendants' statements were elicited as the result of permissible, on-the-scene investigations.  This case is not analogous to either 
Saturday
 or 
Laspisa
.

In sum, because defendant was not afforded the safeguards required by 
Miranda
, the trial court properly suppressed defendant's statement.  Therefore, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

GEIGER and RAPP, JJ., concur.