Filed 8/18/10                    NO. 4-09-0924

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|         Plaintiff-Appellant, | ) | Circuit Court of |
|         v. | ) | Livingston County |
| GERALD R. SNOW, | ) | No. 09DT33 |
|         Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Robert M. Travers, |
| | ) | Judge Presiding. |

_____

JUSTICE APPLETON delivered the opinion of the court:

Defendant, Gerald R. Snow, was arrested for driving under the influence of alcohol. He refused to submit to chemical testing and, as a result of his refusal, the State notified him that his driver's license would be suspended pursuant to the implied-consent statute (625 ILCS 5/11-501.1 (West 2008)) for a minimum of 12 months. Defendant filed a petition to rescind the statutory summary suspension on the basis that the arresting officer lacked reasonable grounds to conduct the traffic stop which led to defendant's arrest. After considering the evidence at the rescission hearing, which included testimony from defendant himself in support of his petition, the trial court denied defendant's requested relief.

Prior to the start of defendant's criminal trial, the State notified the trial court that it would be presenting portions of defendant's testimony from the rescission hearing as part of its case in chief. Defendant objected. The court ultimately concluded that the State was prohibited from presenting defendant's testimony from the prior hearing as

substantive evidence in the criminal trial. The State filed a certificate of impairment and a notice of appeal. After considering the issue within the applicable constitutional framework, we reverse the court's judgment.

## I. BACKGROUND

On March 28, 2009, defendant was cited for driving under the influence of alcohol (DUI) pursuant to section 11-501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(2) (West 2008)). He was notified that his one-year statutory summary suspension would begin on May 13, 2009.

On May 29, 2009, defendant filed a petition to rescind his statutory summary suspension, initially alleging four grounds but, after withdrawing three, he pursued rescission on the sole basis that the arresting officer lacked reasonable suspicion or probable cause to conduct the traffic stop. Defendant claimed he "did not improperly use his turn signal and his trailer ball and hitch did not obstruct his license plate" so as to justify being stopped by the officer. Defendant withdrew the allegations relating to the propriety of his arrest.

On June 11, 2009, the trial court conducted a hearing on defendant's petition. Defendant testified on his own behalf and the State called the arresting officer, Illinois State Police Trooper Nathaniel Lunt. (We will reiterate only the testimony from this civil hearing that is relevant to the issues in this appeal, i.e., the testimony that the State sought to introduce in defendant's criminal trial, as designated for us by the State as highlighted testimony in the verbatim transcript.) Defendant testified that at approximately 9 p.m. on March 28, 2009, he left Scotty's tavern in Pontiac after having "a beer or two." After driving a short distance, for approximately four minutes, he was stopped by Trooper Lunt.

On cross-examination, defendant testified he was at Scotty's for approximately 45 minutes to an hour with Alan Goetsch, Goetsch's wife, and Cheri and Dale Lambert. Before arriving at Scotty's, defendant had one beer at The Corner Junction, a nearby tavern. Before that, defendant had five to six beers at Chumps and Bones tavern over the course of five hours. There he had eaten peanuts and "stuff on the bars." Defendant said he had not noticed the police officer's squad car behind him until the officer activated his overhead lights. Defendant answered each of the State's questions without asserting his privilege against self-incrimination. Defendant's counsel objected to several questions on relevancy, beyond-the-scope-of-direct-examination, and asked-and-answered grounds. The trial court overruled each.

After considering the evidence and arguments of counsel, the trial court denied defendant's petition to rescind, finding the officer had probable cause to stop defendant's vehicle based upon an obstructed rear license plate, a violation of section 3-413(b) of the Illinois Vehicle Code (625 ILCS 5/3-413(b) (West 2008)). (The court was presented with photographic evidence of the alleged violation.)

On December 7, 2009, the trial court convened the parties for defendant's criminal jury trial. At the start of the trial, the prosecutor informed the court that he intended to introduce defendant's testimony from the rescission hearing. The testimony would be used as substantive evidence, not for impeachment purposes, during the State's case in chief. Defendant objected and moved to bar the State's use of the testimony. The court initially indicated it would allow the State to offer defendant's civil-proceeding testimony. However, after affording defendant's counsel time to research the issue, the court entertained the parties' respective arguments. Thereafter, the court reversed its initial

-3-

ruling and barred the use of the testimony, stating as follows:

"All right. I don't see as a distinguishing factor the fact that the defendant chose to take the stand in the rescission hearing, and then, over objection, was required to answer questions posed to him by the State. I see that as a nonfactor. However, I do believe that there is an element of compulsion here by way of the State taking an individual's life through the--or not life, but license through the summary suspension proceeding.

It basically puts him in a position where he is the best witness for his side, having been there, obviously and been arrested for the offense. Then he has to make that election of whether he is going to testify, subject himself to the possibility of the use of that testimony at the DUI proceeding, or simply let it go and suffer the loss of his privileges, or at least increase the chance for the loss of his privileges.

Although there is no case on point, and certainly there is no Fourth District Appellate case that has been handed up, I believe that the better rules [sic] of law is that proposed in Tilden [(Village of Algonquin v. Tilden, 335 Ill. App. 3d 332, 780 N.E.2d 832 (2002))]. And I will bar the use of the defendant's testimony from the summary suspension proceeding for substantive evidence in this proceeding. I will

not, however, bar the use of it for impeachment purposes or if for some other reason, through some other rule of law, the testimony could be allowed in.

So I reverse my earlier ruling having been given the opportunity to review the case law on the subject."

The prosecutor asked for a recess to determine whether the State would be proceeding with the trial. When the parties reconvened, the prosecutor indicated the State would be filing a certificate of impairment and notice of appeal. On December 8, 2009, the State did so. This appeal followed.

## II. ANALYSIS

The State appeals, claiming the trial court erred by barring the use of defendant's testimony given at the rescission hearing as substantive evidence in the subsequent criminal proceeding. This appeal is, in effect, a review of the court's ruling on a motion to suppress evidence. Generally, we would review a court's suppression order under a manifest-weight-of-the-evidence standard. However, because there is no factual or credibility dispute, only a question of law, we review the issue de novo. See People v. Leighty, 362 Ill. App. 3d 258, 260-61, 838 N.E.2d 1014, 1017 (2005). The issue before us is whether the constitution prohibits the State from introducing defendant's testimony, given in the civil statutory-summary-suspension hearing, in his subsequent criminal DUI prosecution. Or, more precisely, whether defendant's testimony in the rescission hearing was considered compelled in violation of his constitutional rights. For the following reasons, we answer both questions in the negative and reverse the court's judgment.

The primary focus of this case rests on the fifth amendment of the United

-5-

States Constitution, which provides as follows: "No person *** shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. Similarly, our state constitution provides that "[n]o person shall be compelled in a criminal case to give evidence against himself nor be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, §10; see Halpin v. Scotti, 415 Ill. 104, 107, 112 N.E.2d 91, 93 (1953) (United States Supreme Court decisions interpreting the fifth amendment are authoritative in construing article I, section 10, of the Illinois Constitution). "The privilege against self-incrimination may b[e] invoked in any proceeding, civil or criminal, in which the witness reasonably believes that the information sought, or discoverable as a result of the witness's testimony, could be used in a subsequent criminal proceeding against him or her." People v. Houar, 365 Ill. App. 3d 682, 688, 850 N.E.2d 327, 332 (2006).

The fifth amendment speaks only of compulsion. "It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the [a]mendment." United States v. Monia, 317 U.S. 424, 427, 87 L. Ed. 376, 380, 63 S. Ct. 409, 410-11 (1943) (immunity statute prohibited the use of a subpoenaed grand-jury witness's incriminating statements even though the witness did not assert the privilege). The witness has a choice; he either testifies or he claims the privilege. "The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow." McGautha v. California, 402 U.S. 183, 213, 28 L. Ed. 2d 711, 729, 91 S. Ct. 1454, 1470 (1971), quoting McMann v. Richardson, 397 U.S. 759, 769, 25 L. Ed. 2d 763, 772, 90 S. Ct. 1441, 1448 (1970).

Here, the trial court relied on the Second District's decision in Tilden, 335 Ill. App. 3d at 339-40, 780 N.E.2d at 837-38, in determining that defendant's suppression-hearing testimony should be precluded from admission in his criminal DUI proceeding. As we explain below, the court's reliance on Tilden was misplaced, as there is a key distinction between Tilden and the case sub judice.

The defendant, Joan Tilden, was sitting in the driver's seat of her car in the parking lot of a gas station with the engine running. Police officer Timothy Wilkin was directed to Tilden by an unidentified person, who had described Tilden as "bombed." Wilkin approached Tilden and asked how she had arrived at the gas station. Wilkin was not allowed to testify at the rescission hearing as to what Tilden told him because he had not advised her of her rights pursuant to Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). Tilden, 335 Ill. App. 3d at 334-35, 780 N.E.2d at 833-34. He was also not allowed to testify that Tilden had admitted consuming four vodka drinks before leaving home. Tilden, 335 Ill. App. 3d at 335, 780 N.E.2d at 834. Based on several other factors, Wilkin asked Tilden to submit to several field-sobriety tests. She failed, and Wilkin arrested her and charged her with DUI. Tilden, 335 Ill. App. 3d at 335, 780 N.E.2d at 834.

Tilden filed a petition to rescind her statutory summary suspension, claiming the police officer lacked reasonable grounds to suspect she had been driving under the influence of alcohol. At the rescission hearing, the Village of Algonquin (Village) called Tilden as an adverse witness. She objected, asserting her fifth-amendment privilege. The trial court sustained her objection and rescinded the statutory summary suspension. Tilden, 334-35 Ill. App. 3d at 335, 780 N.E.2d at 833-34.

The Village appealed, claiming (1) the trial court erred in suppressing Tilden's

statements to Wilkin, and (2) Tilden had waived her fifth-amendment privilege by filing a petition to rescind. Tilden, 335 Ill. App. 3d at 335-36, 780 N.E.2d at 834. The Second District agreed with the Village, finding the court erred in suppressing Tilden's statements despite a lack of Miranda warnings because the proceeding was civil in nature and Miranda procedural safeguards do not apply to civil proceedings. Tilden, 335 Ill. App. 3d at 338, 780 N.E.2d at 836. The court also found Tilden had waived her claim of privilege against self-incrimination by filing a petition to rescind her suspension. Tilden, 335 Ill. App. 3d at 337-38, 780 N.E.2d at 835-36. The appellate court ultimately held that, although Tilden could not assert her fifth-amendment privilege during the rescission proceedings (the Village could compel her testimony), any incriminating statements made during the civil hearing were inadmissible in her contemporaneous criminal DUI action. Tilden, 335 Ill. App. 3d at 339, 780 N.E.2d at 837. The court stated:

> "[A] motorist's fifth[-]amendment right against self-incrimination is not violated when he is compelled to testify as an adverse witness in a hearing on his petition to rescind a statutory summary suspension of driving privileges, but any incriminating testimony from the civil proceeding is inadmissible in other criminal proceedings, such as a contemporaneous DUI action." Tilden, 335 Ill. App. 3d at 339, 780 N.E.2d at 837.

The Tilden court found support for its decision in People v. Lindsey, 199 Ill. 2d 460, 470, 771 N.E.2d 399, 407 (2002), wherein the supreme court held that a probationer could be compelled to testify at a probation-revocation hearing, a proceeding

that was civil in nature. However, <u>Lindsey</u> specifically held that the State could compel the testimony because the defendant faced only the potential revocation of his probationary status if he testified that he had violated his probation by leaving the county jail at unauthorized times. <u>Lindsey</u>, 199 Ill. 2d at 470, 771 N.E.2d at 407. The defendant could not have realistically expected that his testimony would have exposed him to future criminal proceedings. <u>Lindsey</u>, 199 Ill. 2d at 470, 771 N.E.2d at 407.

        The <u>Tilden</u> court recognized that <u>Lindsey</u> was factually distinguishable from the case before it because in <u>Tilden</u>, the defendant, in fact, faced a contemporaneous criminal action. <u>Tilden</u>, 335 Ill. App. 3d at 339, 780 N.E.2d at 837. However, <u>Tilden</u> squared its opinion with <u>Lindsey</u> by relying on <u>Minnesota v. Murphy</u>, 465 U.S. 420, 435, 79 L. Ed. 2d 409, 424, 104 S. Ct. 1136, 1146 (1984), wherein the United States Supreme Court noted that the government <u>could</u> compel a defendant to testify at a civil proceeding, such as a probation-revocation proceeding, when there existed no threat of future criminal actions arising from the testimony. However, the Court went further and found that when statements made by the defendant could incriminate him in a pending or later criminal prosecution, the government may still compel his civil testimony, but must understand that those statements cannot be used in a pending or later criminal proceeding. <u>Murphy</u>, 465 U.S. at 436 n.7, 79 L. Ed. 2d at 425 n.7, 104 S. Ct. at 1147 n.7. This result would eliminate, for the defendant, the threat of self-incrimination, while still allowing the government to administer its probation system. <u>Murphy</u>, 465 U.S. at 436 n.7, 79 L. Ed. 2d at 425 n.7, 104 S. Ct. at 1147 n.7. Thus, <u>Tilden</u> concluded that the government may compel a motorist to testify at the rescission hearing as long as it was understood that any incriminating statements could not be used against the motorist in the contemporaneous DUI action.

<u>Tilden</u>, 335 Ill. App. 3d at 339, 780 N.E.2d at 837.

Relying on <u>Tilden</u>, the Third District similarly held in <u>People v. Hall</u>, 378 Ill. App. 3d 666, 671-72, 882 N.E.2d 85, 88-89 (2007), that the trial court erred in allowing the defendant to invoke his fifth-amendment privilege during his rescission hearing when called as a witness by the State. The court held that the defendant "should not enjoy immunity from answering the State's questions during his rescission proceedings." <u>Hall</u>, 378 Ill. App. 3d at 671, 882 N.E.2d at 89. "With the potential impact on Hall's criminal case eliminated through the policy articulated in <u>Tilden</u>, he is left with the fact that his rescission case is a civil proceeding where the fifth amendment simply does not apply." <u>Hall</u>, 378 Ill. App. 3d at 672, 882 N.E.2d at 89.

It appears the trial court here relied on those portions of the <u>Tilden</u> and <u>Hall</u> holdings that prohibited the government from using the defendant's rescission-hearing testimony in the underlying criminal DUI action. However, the key, to which we alluded previously, that distinguishes defendant's case from the factual scenarios in <u>Tilden</u> and <u>Hall</u>, is that defendant here was never <u>compelled</u> to testify within the meaning of the fifth amendment. Defendant voluntarily took the stand without attempting to assert his privilege against self-incrimination. Any objection asserted by counsel during defendant's cross-examination did not broach an assertion of defendant's privilege. He made general objections, which cannot be construed to assert defendant's privilege. Rather, defendant volunteered statements without assertion.

"'[I]f a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not "compelled" him to incriminate himself.'" <u>Murphy</u>, 465 U.S. at 427, 79 L. Ed. 2d at 419, 104 S. Ct. at 1142, quoting <u>Garner v. United</u>

-10-

_States_, 424 U.S. 648, 654, 47 L. Ed. 2d 370, 377, 96 S. Ct. 1178, 1182 (1976) (footnote omitted). A witness's "failure at any time to assert the constitutional privilege leaves him in no position to complain now that he was compelled to give testimony against himself." _United States v. Kordel_, 397 U.S. 1, 10, 25 L. Ed. 2d 1, 9, 90 S. Ct. 763, 769 (1970). If a witness "chooses to answer, his choice is considered to be voluntary since he was free to claim the privilege and would suffer no penalty as the result of his decision to do so." _Murphy_, 465 U.S. at 429, 79 L. Ed. 2d at 420, 104 S. Ct. at 1143.

Defendant argues he did not have a free choice whether to testify or remain silent, as the loss of his driving privileges was at stake. If he testified, he risked being convicted of DUI. If he remained silent, he risked the suspension of his driving privileges. He claims he was "compelled" in the sense that he was forced to testify if he wanted to retain his driving privileges.

Indeed, prior decisions have found indirect compulsion in the form of some extraneous force, such as duress. One such case is _Garrity v. New Jersey_, 385 U.S. 493, 17 L. Ed. 2d 562, 87 S. Ct. 616 (1967). There, police officers were questioned during an investigation into allegations of ticket fixing. Each officer questioned was informed that (1) his statements could be used against him, (2) he had the right to refuse to answer questions, but (3) if he did refuse, he would be removed from office. _Garrity_, 385 U.S. at 494, 17 L. Ed. 2d at 564, 87 S. Ct. at 617. The Supreme Court found the officers had been deprived of their free choice and were coerced, by the threat of firing, into testifying. _Garrity_, 385 U.S. at 500, 17 L. Ed. 2d at 567, 87 S. Ct. at 620. "There are rights of constitutional stature whose exercise a State may not condition by the exaction of a price." _Garrity_, 385 U.S. at 500, 17 L. Ed. 2d at 567, 87 S. Ct. at 620. "[T]he protection of the individual under the [f]ourteenth

-11-

[a]mendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic." Garrity, 385 U.S. at 500, 17 L. Ed. 2d at 567, 87 S. Ct. at 620.

Duress was also a factor in Lefkowitz v. Cunningham, 431 U.S. 801, 806, 53 L. Ed. 2d 1, 7, 97 S. Ct. 2132, 2136 (1977), where a New York statute provided that if a political-party officer was subpoenaed to testify before a grand jury regarding the conduct of his office, and the officer refused to testify, his term of office would be terminated and he would be disqualified from holding another public office for five years. In holding the statute unconstitutional, the Supreme Court said: "These cases settle that government cannot penalize assertion of the constitutional privilege against compelled self-incrimination by imposing sanctions to compel testimony which has not been immunized." Lefkowitz, 431 U.S. at 806, 53 L. Ed. 2d at 7-8, 97 S. Ct. at 2136. See also Lefkowitz v. Turley, 414 U.S. 70, 84-85, 38 L. Ed. 2d 274, 286, 94 S. Ct. 316, 326 (1973) (state could not compel architects to testify before grand jury with threat of canceling public contracts).

In Simmons v. United States, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968), duress was not the factor. Instead, the witness was forced to choose between the exercise of one constitutional right at the expense of another. The defendant testified in a hearing on his motion to suppress, and that testimony was used against him at trial. The Supreme Court held that such practice was unconstitutional and "intolerable." Simmons, 390 U.S. at 394, 19 L. Ed. 2d at 1259, 88 S. Ct. at 976. The defendant "was obliged either to give up what he believed *** to be a valid [f]ourth [a]mendment claim or, in legal effect, to waive his [f]ifth [a]mendment privilege against self-incrimination." Simmons, 390 U.S.

at 394, 19 L. Ed. 2d at 1259, 88 S. Ct. at 976.

This case does not involve compelled testimony. The potential risk of losing driving privileges does not rise to the level of an "impermissible penalty" imposed by the government (Murphy, 465 U.S. at 437, 79 L. Ed. 2d at 426, 104 S. Ct. at 1148) or "an undeniable tension" (Simmons, 390 U.S. at 394, 19 L. Ed. 2d at 1259, 88 S. Ct. at 976) between the exercise of two fundamental rights should defendant choose to remain silent. This is especially true based on the nature of the allegation defendant relied upon as the sole basis for his petition to rescind. Defendant premised his petition on the claim that he had not violated any traffic law, and thus, the officer lacked any justification to conduct the traffic stop. In other words, he argued that his suspension should be rescinded because the officer lacked any justifiable reason to stop his vehicle. When a police officer observes a driver commit what he believes is a traffic violation, he is justified in briefly detaining the driver to investigate the violation. People v. Sorenson, 196 Ill. 2d 425, 433, 752 N.E.2d 1078, 1084 (2001). The officer may perform some initial inquiries, check the driver's license, and conduct a speedy warrant check. At that point, the motorist's constitutional rights have not been implicated. Thus, in this case, defendant was not confronted with the tension of exercising one constitutional right at the expense of surrendering another. Cf. Simmons, 390 U.S. at 394, 19 L. Ed. 2d at 1259, 88 S. Ct. at 976.

Taken together, the above authority leads to the following conclusion. If a defendant chooses to testify at a hearing on his petition to rescind his statutory summary suspension, he must do so knowing that his testimony may be used against him in the underlying criminal action. If he does not choose to testify by asserting his fifth-amendment privilege, he risks the arguable inability to successfully prosecute his petition.

-13-

The State may then call the defendant as an adverse witness in its defense of the petition, and, as explained above, the defendant could be forced to testify, as he would be unable to rely on his fifth-amendment privilege. Therefore, any incriminating statements could not be used against him in his underlying criminal action.

"The constitutional guarantee against self-incrimination protects a witness from being forced to give testimony leading to the imposition of criminal penalties, but it does not insulate a witness from every possible detriment resulting from his testimony." Giampa v. Illinois Civil Service Comm'n., 89 Ill. App. 3d 606, 613, 411 N.E.2d 1110, 1116 (1980). We conclude that since defendant chose to testify instead of claiming the privilege, his "disclosures were not compelled incriminations." Garner, 424 U.S. at 665, 47 L. Ed. 2d at 384, 96 S. Ct. at 1188. He, therefore, "was foreclosed from invoking the privilege when such information was later introduced as evidence against him in [his] criminal prosecution." See Garner, 424 U.S. at 665, 47 L. Ed. 2d at 384, 96 S. Ct. at 1188 (taxpayer disclosed income on federal tax return, rather than asserting privilege, and such disclosure was properly used against him in subsequent criminal proceedings). Defendant's rescission-hearing testimony was entirely voluntary and subsequently admissible in the criminal proceedings.

Although the possibility of losing one's driving privileges after an unsuccessful bid to rescind a statutory summary suspension may make participation in the hearing "a wise choice," the companion procedures do not place a defendant "'between the rock and the whirlpool.' [Citation.] He can, if he wishes, stay out of the stream and watch the proceedings from dry land. But, if he does so, he forfeits any opportunity to control the direction of the current. [A defendant] must decide whether or not to testify at the hearing

with the knowledge that, if he does, his statements may be used against him in the criminal case." <u>Gabrilowitz v. Newman</u>, 582 F.2d 100, 104 (1st Cir. 1978), quoting <u>Garrity</u>, 385 U.S. at 498, 17 L. Ed. 2d at 566, 87 S. Ct. at 619.

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment and hold the State may introduce defendant's voluntary testimony from the rescission hearing in the subsequent criminal DUI trial.

Reversed.

MYERSCOUGH, P.J., and STEIGMANN, J., concur.