# Illinois Official Reports

## Appellate Court

*People v. Davis*, 2014 IL App (4th) 121040

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LORONZO A. DAVIS, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-1040 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | November 14, 2014<br><br>December 8, 2014<br>December 8, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for unlawful possession of a controlled substance with intent to deliver and driving while his license was revoked were upheld over his contentions that his trial counsel was ineffective in failing to object to the admission of the contents of a text message on his telephone and his failure to move to suppress the message and that the evidence was insufficient to prove that he intended to deliver the controlled substance, since there was an adequate foundation after the officer who discovered the message testified that he had read the message and the best evidence rule did not apply where the State only used the message to prove defendant's intent to deliver the cocaine, and under the circumstances, the evidence was sufficient to support an inference that defendant intended to deliver the cocaine that was discovered in his pocket following a traffic stop. |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 12-CF-375; the Hon. Thomas E. Griffith, Jr., Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Daaron V. Kimmel (argued), all of State Appellate Defender's Office, of Springfield, for appellant. |
|---|---|
| | Jay Scott, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Holder White and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1     In March 2012, the State charged defendant, Loronzo A. Davis, with unlawful possession of a controlled substance with intent to deliver (prior offense) (720 ILCS 570/401(c)(2) (West 2012)). In June 2012, the State charged defendant with driving while license revoked (prior offense) (625 ILCS 5/6-303(d-3) (West 2012)). In August 2012, a Macon County jury found defendant guilty of both offenses. In November 2012, the trial court sentenced defendant to nine years' imprisonment for possession of a controlled substance with intent to deliver and three years' imprisonment for driving while license revoked, with the sentences to run concurrently.

¶ 2     On appeal, defendant argues trial counsel was ineffective for failing to (1) object to the admission of the contents of a text message, and (2) file a motion to suppress the contents of the text message. Defendant also argues the evidence was insufficient to prove he possessed a controlled substance with the intent to deliver. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     In March 2012, the State charged defendant with unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2012)). In June 2012, the State charged defendant with driving while license revoked with three prior convictions for driving with a revoked license (625 ILCS 5/6-303(d-3) (West 2012)).

¶ 5     In August 2012, the trial court held a jury trial at which the following evidence was presented. Bradley Hall, a police officer with the Decatur police department, testified he conducted a traffic stop at 1:07 a.m. on January 8, 2012, of the vehicle defendant was driving. From the time Hall activated his emergency lights to the time defendant stopped the vehicle, Hall had a clear view of the vehicle and did not see anything come out of the vehicle. Hall arrested defendant for driving with a revoked driver's license and conducted a search incident to arrest of defendant's person. Hall located a clear plastic bag containing a white rock-like substance in defendant's pants pocket. This substance was later determined to be 2.1 grams of cocaine base. Hall did not locate anything in defendant's vehicle or on his

- 2 -

person which could be used to consume cocaine. Nor did he locate a scale, other plastic bags, or any money.

¶ 6    David Dailey, a detective with the Decatur police department, testified as an expert in controlled substance distribution. He testified cocaine base is the scientific term for crack cocaine. Crack cocaine is different from powder cocaine as it is smoked and not snorted or injected. In Decatur, crack cocaine is sold in amounts as small as 0.1 grams for $10. This is the most common dosage amount for crack cocaine. The 2.1 grams of crack cocaine would amount to 21 doses. Dailey testified drug dealers in the past had packaged the crack cocaine in separate bags, used scales, and carried large sums of money, but they had changed methods. The current trend is for dealers to carry one bag, keep the cocaine in one "rock," and avoid carrying a scale and large sums of money. Dailey testified it was his opinion defendant possessed the crack cocaine with the intent to deliver based on the fact 2.1 grams is consistent with a distribution amount, the lack of drug paraphernalia, the presence of the cell phone, the text message, and defendant's admission he sells crack cocaine.

¶ 7    On January 8, 2012, Dailey interviewed defendant; a portion of this interview was played for the jury. During the interview, defendant asserted the crack cocaine was for his own consumption. He admitted he "occasionally" sold crack cocaine. Dailey told defendant defendant had received a text message asking about purchasing a "30 or a 40." Defendant said he did not remember the text message and replied he deals over the phone but does not get text messages with "that kind of information." The interview concluded with Dailey discussing defendant's possible cooperation with the police.

¶ 8    Dailey testified he searched through the recent text messages on defendant's cell phone and defendant received a text message at 1:32 a.m. which stated, "Can you meet me for a 30 or a 40?" This is consistent with someone trying to purchase $30 or $40 worth of crack cocaine. Dailey did not find any other messages about delivering drugs. He testified that pursuant to an agreement defendant would cooperate with police in other investigations, and the phone was returned to defendant.

¶ 9    Defendant testified and admitted he was addicted to cocaine. He had been "off and on" cocaine for the past 20 years. He testified two to three days a week he would "sneak out" early in the morning to smoke crack cocaine. He did this because he wanted to hide the fact he was smoking crack cocaine from his girlfriend. On January 8, 2012, he was going to smoke in private. He explained he threw his pipe out of the car window before he was stopped and this is why the officer did not find a pipe. He testified he sells drugs "maybe three to four times a year, if that." On cross-examination, he again admitted selling drugs and explained he deals during the day and not at night.

¶ 10    In September 2012, defendant filed a motion for a new trial, arguing the evidence was insufficient. In November 2012, the trial court held a hearing on the motion for a new trial. The court denied the motion and immediately thereafter held a sentencing hearing. The State introduced a presentence investigation report showing convictions in Macon County for 12 felonies. Defendant was previously convicted of driving with a revoked license in Macon County case Nos. 05-CF-278 and 05-CF-969. He was convicted of unlawful possession of a controlled substance in Macon County case No. 92-CF-153. The court found defendant was eligible for sentencing as a Class X offender because of his previous felony convictions (730 ILCS 5/5-4.5-95 (West 2012)) and sentenced defendant as previously stated.

¶ 11    This appeal followed.

¶ 12                              II. ANALYSIS

¶ 13      On appeal, defendant argues trial counsel was ineffective for failing to (1) object to the admission of the contents of a text message, and (2) file a motion to suppress the contents of the text message. Defendant also argues the evidence was insufficient to prove he possessed a controlled substance with the intent to deliver. Defendant's arguments are unpersuasive.

¶ 14              A. Defendant's Ineffective-Assistance-of-Counsel Claims

¶ 15      Ineffective-assistance-of-counsel claims are reviewed under the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, a defendant must demonstrate (1) "his defense counsel's performance was deficient in that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment' "; and (2) "but for defense counsel's deficient performance, the result of the proceeding would have been different." *People v. Coleman*, 183 Ill. 2d 366, 397, 701 N.E.2d 1063, 1079 (1998) (quoting *Strickland*, 466 U.S. at 687). To satisfy the first prong, "a defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence." *Id.* A court "may resolve ineffectiveness claims under the two-part *Strickland* test by reaching only the prejudice component, for lack of prejudice renders irrelevant the issue of counsel's performance." *Id.* at 397-98, 701 N.E.2d at 1079.

¶ 16          1. *Defendant's Argument Trial Counsel Was Ineffective for Failing To Object*
                    *to the Admission of the Text Message's Contents*

¶ 17      Defendant argues trial counsel was ineffective for failing to object to the admission of the text message's contents. Specifically, defendant contends counsel should have objected on the basis of (1) lack of foundation, (2) violation of the best evidence rule, and (3) hearsay. He asserts he was prejudiced by the lack of an objection because the text message was the State's "strongest piece of evidence" of his intent to sell and the other evidence relating to his intent was "inconclusive."

¶ 18      Defendant's argument is focused on Dailey's testimony about what the text message stated but the record shows the State first played portions of defendant's police interview in which Dailey told defendant defendant had received a text message asking for a 30 or a 40 and asked defendant about the text message. After the video of this interview was played, the State asked Dailey what the text message stated and Dailey testified it stated, "Can I get a 30 or a 40?" Defense counsel did not object. The record shows counsel cross-examined Dailey about the text message and his testimony the text message was consistent with drug dealing.

¶ 19      There is a strong presumption counsel's action or inaction was the product of sound trial strategy and " '[m]atters of trial strategy are generally immune from claims of ineffective assistance of counsel.' " *People v. Manning*, 241 Ill. 2d 319, 327, 948 N.E.2d 542, 547 (2011) (quoting *People v. Smith*, 195 Ill. 2d 179, 188, 745 N.E.2d 1194, 1200 (2000)). Defendant has not provided any insight into trial counsel's decision not to object or overcome this presumption of competence. See *People v. Bew*, 228 Ill. 2d 122, 134, 886 N.E.2d 1002, 1009 (2008) (claims of ineffective assistance of counsel where the record on direct appeal is insufficient to support a claim of ineffective assistance of counsel are

preferably brought on collateral review). Defendant has not satisfied the deficient-performance prong of *Strickland*.

¶ 20    Defendant has not satisfied *Strickland*'s prejudice prong as he has not shown any reasonable probability an objection based on the grounds identified would have succeeded. See *People v. Patterson*, 347 Ill. App. 3d 1044, 1053, 808 N.E.2d 1159, 1167 (2004). Defendant asserts the State failed to lay a proper foundation to introduce the contents of the text message. Defendant's argument rests on the assumption the State had to lay the same foundation required for introduction of a document. See *People v. Chromik*, 408 Ill. App. 3d 1028, 1046, 946 N.E.2d 1039, 1055 (2011) ("An adequate foundation is laid when a document is identified and authenticated."). But the State did not introduce a document. It first played the interview video in which Dailey confronted defendant with the text message and then asked Dailey what the text message stated. Once Dailey testified he had read the text message, there was a foundation for him to testify about what it stated. Compare *id.* at 1048, 946 N.E.2d at 1056-57 (discussing admission of a transcription of text messages). Defendant next asserts Dailey's testimony about the text message violated the best evidence rule. "The best evidence rule applies only when the contents or terms of a writing are in issue and must be established." *People v. Pelc*, 177 Ill. App. 3d 737, 742, 532 N.E.2d 552, 555 (1988); see also Ill. R. Evid. 1002 (eff. Jan. 1, 2011) ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute."). The best evidence rule did not apply because the State did not seek to prove the content or terms of the text message–it sought to prove defendant intended to deliver the crack cocaine and used the text message as circumstantial evidence of this intent. The actual contents or terms of the text message did not matter. What mattered is the time it was received–soon after defendant was found in possession of 2.1 grams of cocaine–and what it requested. Defendant last asserts Dailey's testimony was hearsay because "[t]he purpose of introducing the text message was to portray [defendant] as a drug dealer, which depended on the truth of the content of the message: that someone wanted to buy drugs from [defendant]." This is not hearsay. Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Jan. 1, 2011). Here, Dailey's testimony–the text message stated, "Can you meet me for a 30 or 40?"–was not offered to prove the truth of the matter asserted but rather as information about the police investigation and circumstantial evidence of defendant's intent to deliver drugs.

¶ 21    *2. Defendant's Argument Trial Counsel Was Ineffective for Failing To File a Motion To Suppress Evidence From His Cell Phone*

¶ 22    Defendant argues trial counsel was ineffective for failing to file a motion to suppress the text message because the police were required to obtain a search warrant before searching defendant's cell phone.

¶ 23    Defense counsel may be ineffective for misunderstanding applicable law. *People v. Hartfield*, 232 Ill. App. 3d 198, 207, 596 N.E.2d 703, 709 (1992). But counsel's understanding must be considered in the context of the state of the law at the time (*People v. English*, 2013 IL 112890, ¶ 34, 987 N.E.2d 371), and "counsel is not incompetent for failing to accurately predict that existing law will change" (*People v. Weninger*, 292 Ill. App. 3d 340, 345, 686 N.E.2d 24, 28 (1997)). At the time of defendant's trial in August 2012, the

question of whether police could conduct a warrantless search of the data on a cell phone had not been resolved in Illinois. As the State points out, courts across the country were split on the legality of a warrantless cell phone search and many courts had found warrantless searches were valid. See *United States v. Finley*, 477 F.3d 250, 260 (5th Cir. 2007) (warrantless search of cell phone incident to arrest was lawful); *United States v. Murphy*, 552 F.3d 405, 411 (4th Cir. 2009) ("officers may retrieve text messages and other information from cell phones and pagers seized incident to an arrest"); *Hawkins v. State*, 723 S.E.2d 924 (Ga. 2012) (same); but see *State v. Smith*, 124 Ohio St. 3d 163, 2009-Ohio-6426, 920 N.E.2d 949, at ¶ 29 (warrantless search of cell phone's data is prohibited). In June 2014, 22 months after defendant's trial, the United States Supreme Court provided a definitive answer to this question. In *Riley v. California*, 573 U.S. ___, 134 S. Ct. 2473 (2014), the Supreme Court considered whether the search-incident-to-arrest exception to the warrant requirement should include searches of the data on a cell phone seized from an individual who has been arrested. The *Riley* Court declined to extend the search-incident-to-arrest exception to include searches of the data on a cell phone and held "a warrant is generally required before such a search, even when a cell phone is seized incident to arrest." *Id.* at ___, 134 S. Ct. at 2493.

¶ 24   Defendant, as in his argument above, has not provided any insight into trial counsel's decision not to file a motion to suppress on the basis the police were required to obtain a search warrant before examining defendant's cell phone. At the time of defendant's trial, such a motion had a questionable chance of success. We agree with the State, a reasonable argument could have been made at the time, based on Illinois precedent, a warrantless search of a cell phone was valid pursuant to the search-incident-to-arrest exception. See *People v. Dillon*, 102 Ill. 2d 522, 529, 468 N.E.2d 964, 967 (1984) (search of wallet); *People v. Cregan*, 2011 IL App (4th) 100477, ¶ 26, 961 N.E.2d 926 (search of luggage). *Riley* obviously changed things, but to accept defendant's argument we would have to conclude counsel was ineffective for failing to predict the future and anticipate *Riley*. We decline to impose such "a duty of clairvoyance." *Hartfield*, 232 Ill. App. 3d at 208, 596 N.E.2d at 710.

¶ 25                    B. Defendant's Sufficiency-of-the-Evidence Claim

¶ 26   Defendant argues the State failed to prove he intended to deliver a controlled substance. Specifically, he asserts the evidence of his intent was "inconclusive" because (1) the amount of crack cocaine found on his person was not too large for personal use, (2) the appearance and condition of the crack cocaine "did not imply anything important," (3) he was not found in possession of other items consistent with drug dealing, (4) the text message asking for a "30 or a 40" was sent after he was arrested, and (5) he maintained the drugs were for his personal consumption.

¶ 27   "Where a criminal conviction is challenged based on insufficient evidence, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime." *People v. Brown*, 2013 IL 114196, ¶ 48, 1 N.E.3d 888. "When considering the sufficiency of the evidence, 'our function is not to retry the defendant.' " *People v. Beauchamp*, 241 Ill. 2d 1, 8, 944 N.E.2d 319, 322 (2011) (quoting *People v. Sutherland*, 223 Ill. 2d 187, 242, 860 N.E.2d 178, 217 (2006)). "As a reviewing court, '[w]e will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.' " *Id.*,

944 N.E.2d at 323 (quoting *People v. Collins*, 214 Ill. 2d 206, 217, 824 N.E.2d 262, 267-68 (2005)).

¶ 28    Defendant relies upon *People v. Robinson*, 167 Ill. 2d 397, 657 N.E.2d 1020 (1995), to assert the evidence presented was "inconclusive" of his intent to deliver. In *Robinson*, our supreme court recognized a criminal defendant's intent to deliver a controlled substance is usually proved by circumstantial evidence. *Id.* at 408, 657 N.E.2d at 1026. It found factors probative to an intent to deliver include (1) "whether the quantity of controlled substance in defendant's possession is too large to be viewed as being for personal consumption"; (2) the purity of the drug; (3) possession of weapons, large amounts of cash, and cellular telephones; (4) presence of drug paraphernalia; and (5) "the manner in which the substance is packaged." *Id.*, 657 N.E.2d at 1026-27. Defendant goes through these factors to argue each factor is "inconclusive" of his intent to deliver. This is largely a request for this court to reweigh the evidence. We will not. Defendant seems to understand *Robinson* as an exhaustive list of what must be shown to prove intent to deliver. *Robinson* was decided nearly 20 years ago and, as Dailey testified, drug dealers have changed their methods and tactics in response to criminal investigations and prosecutions. Moreover, the *Robinson* court expressly stated "[t]he question of whether the evidence is sufficient to prove intent to deliver must be determined on a case-by-case basis" (*id.* at 412-13, 657 N.E.2d at 1029) and cautioned: "In light of the *** infinite number of potential factual scenarios in [drug] cases, there is no hard and fast rule to be applied in every case" (*id.* at 414, 657 N.E.2d at 1030).

¶ 29    Here, the undisputed evidence showed defendant (1) was stopped at approximately 1 a.m. as he was travelling away from his home, (2) was carrying 2.1 grams of crack cocaine (the equivalent of 21 doses), and (3) admitted to police and in his testimony he sold crack cocaine. Defendant is correct no evidence showed (1) he possessed scales, (2) he possessed large amounts of money, and (3) the crack cocaine was packaged in separate bags. But Dailey testified drug dealers had changed their methods to avoid carrying scales, large amounts of money, and packaging in separate bags. Now dealers were carrying a single "rock" in a single plastic bag–exactly how the crack cocaine was packaged here. Defendant asserts the text message does not show his intent to deliver because it was received after his arrest, and no evidence showed the text message was meant for him or he would have accepted the request. This is all argument about the weight of the evidence. See *People v. Washington*, 2012 IL 110283, ¶ 60, 962 N.E.2d 902 ("It is the jury's function to weigh the evidence, assess the credibility of the witnesses, resolve conflicts in the evidence, and draw reasonable inferences therefrom."). Dailey testified the text message was received soon after defendant was found with the crack cocaine and was consistent with a request to purchase crack cocaine. Although it was received after defendant's arrest, a reasonable jury could have used it as circumstantial evidence of defendant's intent to deliver crack cocaine, *i.e.*, to explain what defendant was up to at 1 a.m. with 2.1 grams of crack cocaine in his pocket. The jury could have rejected defendant's assertions the crack cocaine was for his personal consumption. Defendant admitted being a drug addict and having previously sold crack cocaine. As the State points out, the jury could have found defendant lacked credibility when he testified he was driving to a remote location with 2.1 grams of crack cocaine (an amount equivalent to 21 doses) so his girlfriend would not find out he was smoking crack cocaine. Viewing the evidence in the light most favorable to the State, the evidence in this case was sufficient to support an inference defendant intended to deliver the controlled substance.

¶ 30                                    III. CONCLUSION

¶ 31            We affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002(a) (West 2012).

¶ 32            Affirmed.